NOT DESIGNATED FOR PUBLICATION

No. 113,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN D. SMITH,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed April 8, 2016. Sentence vacated and case remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*: Shawn D. Smith appeals the district court's denial of his motion to correct illegal sentence pursuant to K.S.A. 22-3504. After completing his direct appeal, Smith filed a motion to correct illegal sentence, alleging that his sentence was illegal due to the improper classification of a prior South Carolina burglary conviction as a person felony for criminal history purposes. The district court denied the motion. For the first time on appeal, Smith argues that his South Carolina burglary conviction should have been scored as a nonperson felony for criminal history purposes based on our Supreme Court's holding in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). The State

1

argues that Smith is procedurally barred from seeking relief under *Dickey*. In the alternative, the State argues that the classification of the South Carolina burglary as a person felony does not violate Smith's constitutional rights as applied by our Supreme Court in *Dickey*. For the reasons stated herein, we conclude that Smith is not procedurally barred from raising his claim under *Dickey*, but the case must be remanded to the district court for further proceedings to determine if Smith is entitled to relief.

In November 2006, a jury found Smith guilty of aggravated kidnapping. The presentence investigation (PSI) report calculated Smith's criminal history score as "C," due in part to a 1993 South Carolina conviction identified as "Burglary of Dwelling 2nd Degree" and classified as an adult person felony. Although Smith objected to his PSI report on other grounds, he did not object to the classification of the South Carolina burglary conviction. On December 19, 2006, the district court sentenced Smith to 272 months' imprisonment with 36 months' postrelease supervision.

Smith timely pursued a direct appeal. Relevant to his criminal history, Smith argued only that the district court violated his Sixth and Fourteenth Amendment rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to increase his sentence without requiring the State to prove them beyond a reasonable doubt to a jury. *State v. Smith*, No. 97,951, 2008 WL 4416029, *7-8 (Kan. App. 2008) (unpublished opinion), *rev. denied* 288 Kan. 835 (2009). This court affirmed Smith's conviction and sentence, and our Supreme Court denied Smith's petition for review.

On June 9, 2014, Smith filed a pro se motion to correct illegal sentence pursuant to K.S.A. 22-3504, arguing that the classification of his 1993 South Carolina burglary conviction as a person felony for criminal history purposes violated our Supreme Court's holding in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251

(2015), *cert. denied* 136 S. Ct. 865 (2016). The *Murdock* court held that when calculating a defendant's criminal history that includes out-of-state convictions committed prior to the enactment of the Kansas Sentencing Guidelines Act (KSGA), the out-of-state convictions must be classified as nonperson offenses. 299 Kan. 312, Syl. ¶ 5. In the motion, Smith cited K.S.A. 22-3504(1) for the proposition that a court may correct an illegal sentence at any time. On November 13, 2014, Smith's court-appointed attorney filed a motion to correct illegal sentence, also claiming that under *Murdock*, Smith's criminal history was inaccurate and his sentence was illegal.

The State filed a response to the motions, arguing first that res judicata barred the application of *Murdock* "in any case where a defendant either challenged or failed to challenge criminal history on direct appeal." Next, the State asserted that *Murdock* should not be applied retroactively to cases already final because (1) *Murdock* created a new rule of law, (2) retroactive application would not further the underlying principle upon which *Murdock* was based, and (3) retroactive application would cause the State to suffer substantial hardship. On December 16, 2014, the district court filed a motion minutes sheet denying the motions, stating only: "Court adopts the State's response as its findings of fact and conclusions of law on final cases[.]" Smith timely appealed.

While Smith's appeal was pending, our Supreme Court overruled *Murdock* in *Keel*. See 302 Kan. 560, Syl. ¶ 9. Smith filed a reply brief, arguing for the first time that he was entitled to relief based on our Supreme Court's decision in *Dickey*, which also was issued while Smith's appeal was pending. Specifically, Smith argued that the classification of his South Carolina burglary as a person offense for criminal history purposes necessarily required judicial factfinding in violation of his constitutional rights as described in *Apprendi* and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and as applied by our Supreme Court in *Dickey*. This court ordered supplemental briefing on whether Smith is entitled to relief under *Dickey*.

In this opinion, we need not address Smith's original claim that the district court erred in denying his motion to correct illegal sentence based on our Supreme Court's holding in *Murdock*, as *Murdock* has been overruled by *Keel*, 302 Kan. 560, Syl. ¶ 9. Likewise, we need not address Smith's argument in his initial brief that the retroactive application of 2015 House Bill 2053 would violate the Ex Post Facto Clause of the United States Constitution because the district court did not deny Smith's motion to correct illegal sentence based on House Bill 2053. Instead, we address only Smith's remaining claim that he is entitled to relief from his sentence based on *Dickey*.

IS SMITH'S MOTION PROCEDURALLY BARRED?

Smith has filed a motion to correct illegal sentence pursuant to K.S.A. 22-3504. K.S.A. 22-3504(1) provides that "[t]he court may correct an illegal sentence at any time." Whether a sentence is illegal is a question of law over which an appellate court has unlimited review. *State v. Moncla*, 301 Kan. 549, 551, 343 P.3d 1161 (2015).

> "'[A]n "illegal sentence" under K.S.A. 22-3504 [is]: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served.' [Citation omitted.]" 301 Kan. at 551.

The threshold issue in this appeal is whether *Dickey* is applicable in cases such as Smith's where the direct appeal is final and the procedural vehicle used is a motion to correct illegal sentence pursuant to K.S.A. 22-3504. The State argues that Smith is procedurally barred from bringing his claim for two reasons. First, the State maintains that the doctrine of res judicata bars Smith's claim. Specifically, the State argues that Smith could have challenged the classification of his South Carolina burglary conviction as a person felony in his direct appeal and he has waived the issue because he failed to do

4

so. Second, the State argues that the holding in *Dickey* should not be retroactively applied to Smith's case which was final before *Dickey* was decided.

*Res judicata*

The State first argues that the doctrine of res judicata bars Smith's claim. "The applicability of res judicata is a question of law over which this court has unlimited review." *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013).

> "The doctrine of res judicata provides that 'where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.' [Citations omitted.]" *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 (2014).

"The essence of the doctrine of res judicata is that issues 'once finally determined . . . cannot afterwards be litigated.'" *Kingsley*, 299 Kan. at 901. Four elements are required to apply the doctrine of res judicata to procedurally bar a claim: (1) the same claim; (2) the same parties; (3) the claim at issue was or could have been raised in the previous appeal; and (4) there was a final judgment on the merits. 299 Kan. at 901. The State argues that Smith could have raised his current challenge to his sentence in his direct appeal and, by failing to do so, he has waived it. Smith has not directly addressed the State's res judicata argument. Nevertheless, when closely examined, the State's argument is not persuasive.

As the State notes, Kansas appellate courts previously have applied the doctrine of res judicata to motions to correct illegal sentences. See *State v. Conley*, 287 Kan. 696, 698, 197 P.3d 837 (2008) ("Res judicata applies to motions to correct illegal sentence filed pursuant to K.S.A. 22-3504."). The State points to *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000), in which our Supreme Court reiterated that a motion to correct

illegal sentence "may not be used as a vehicle to breathe new life into appellate issues previously abandoned or adversely determined." The State argues that under *Johnson*, Smith has abandoned his claim by not pursuing it in his direct appeal.

*Johnson* is distinguishable because the issue that was barred by res judicata in that case was whether the State acted at sentencing in a way that was inconsistent with its plea bargain obligations. See 269 Kan. at 601. As the *Johnson* court noted, even if that error occurred, it would not render a sentence illegal under K.S.A. 22-3504(1). 269 Kan. at 601. Here, if Smith's criminal history score was miscalculated based on an incorrect classification of his South Carolina burglary conviction, his sentence is illegal. See *State v. Luarks*, 302 Kan. 972, 975, 360 P.3d 418 (2015) (stating the claim of misclassification of prior convictions as person offenses "necessarily raise[s] a claim that the current sentence is illegal because it does not comply with the applicable statutory provision regarding the term of punishment authorized").

The State provides no citation to a case in which a Kansas appellate court has applied the doctrine of res judicata or waiver to bar a claim when that claim, if true, would render a sentence illegal and the claim has not been previously addressed on its merits. The cases in which Kansas appellate courts have applied res judicata to motions to correct an illegal sentence involve claims that previously were resolved on the merits or claims that would not render a sentence illegal, even if true. See, *e.g.*, *State v. Martin*, 294 Kan. 638, 640-41, 279 P.3d 704 (2012) (barring through res judicata claim of illegal sentence that was raised and denied at least six times previously), *cert. denied* 134 S. Ct. 114 (2013); *Conley*, 287 Kan. at 698 (A motion to correct illegal sentence "may not be used to breathe new life into an appellate issue *previously adversely determined*." [Emphasis added.]); *Johnson*, 269 Kan. at 601.

Moreover, interpreting the doctrine of res judicata to bar challenges of an illegal sentence merely because they *could* have been brought in a direct appeal would

undermine the clear statutory directive that courts may correct an illegal sentence at any time under K.S.A. 22-3504(1). As this court recently explained in an unpublished decision, res judicata generally applies to all issues that were or could have been raised in an appeal from a sentence or conviction. *Angelo v. State*, No. 109,660, 2014 WL 1096834, at *3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 301 Kan. ___ (January 8, 2015). But the *Angelo* court also stated: "However, K.S.A. 22-3504(1) provides an exception to this rule. If a sentence is illegal, then the court may correct an illegal sentence at any time despite a defendant's failure to raise the issue on direct appeal." 2014 WL 1096834, at *3. This court continued: "[If a] sentence is illegal, res judicata does not apply and we have jurisdiction over the issue." 2014 WL 1096834, at *4.

Our Supreme Court took a similar position in *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011). The *Neal* court noted that although the defendant had not raised in his direct appeal the issue of aggregation of prior uncounseled misdemeanor convictions for criminal history purposes, "the motion to correct illegal sentence is not subject to our general rule that a defendant must raise all available issues on direct appeal." 292 Kan. at 631. Based on the analysis in *Neal* and *Angelo* and because a broad application of res judicata would contravene the clear directive of K.S.A. 22-3504(1), we decline to apply the doctrine of res judicata or waiver to bar Smith's claim of an illegal sentence. See *State v. Martin*, 52 Kan. App. 2d ___, Syl. ¶¶ 4-5, ___ P.3d ___ (No. 113,189, filed March 4, 2016).

*Retroactivity*

Next, the State argues that the holding in *Dickey* should not be "retroactively applied" to cases, like Smith's, that became final prior to our Supreme Court's opinion in *Dickey*. The State points out that *Dickey* involved a challenge to criminal history *on*

7

*direct appeal*. Smith, however, brought his claim in a motion to correct illegal sentence filed after his sentence had become final.

"Generally, when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013). The general rule prohibiting retroactive application of an appellate court decision stems from our Supreme Court's adoption of the United States Supreme Court's rules that in only two instances should new constitutional rules be applied retroactively to cases on collateral review. As explained by our Supreme Court in *Drach v. Bruce*, 281 Kan. 1058, 1072, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007):

> "'Under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), a new rule of constitutional criminal procedure is not applied retroactively on collateral review unless (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to prosecute, or (2) it is a watershed rule requiring the observance of those procedures that are implicit in the concept of ordered liberty.' [Citation omitted.]"

Despite the general rule prohibiting retroactive application of an appellate court decision, we are not convinced that Smith is procedurally barred from bringing his claim under *Dickey*. Again, we find guidance in *Neal*. In that case, the defendant filed a motion to correct illegal sentence under K.S.A. 22-3504(1) and raised a constitutional challenge to his sentence, arguing that prior uncounseled misdemeanor convictions could not be aggregated and included in calculating his criminal history score. The defendant had completed his direct appeal and his sentence was final. The Supreme Court led off the opinion by discussing whether the defendant's motion was procedurally barred, *i.e.*, whether K.S.A. 22-3504(1) was a proper vehicle for his claim. The Supreme Court noted that it has defined an illegal sentence as one imposed by a court without jurisdiction, a

sentence which does not conform to the statutory provision, either in character or in the term of the punishment authorized, or a sentence which is ambiguous with regard to the time and manner in which it is to be served. 292 Kan. at 630. The Supreme Court determined that if either the crime severity level or the criminal history score is in error, a party can challenge a sentence as being illegal. See 292 Kan. at 631. The Supreme Court went on to conclude:

> "Here, Neal's challenge to his criminal history score is necessarily a challenge to his sentence that the history score helped produce. If the history score is incorrect, it follows that his resulting sentence cannot conform with the statutory provision in the term of the punishment authorized . . . , and, consequently, is an illegal sentence. Accordingly, K.S.A. 22-3504 is the proper vehicle for his claim. [Citation omitted.]" 292 Kan. at 631.

Generally, a defendant may not file a motion to correct an illegal sentence based on constitutional challenges to his or her sentence. See *Moncla*, 301 Kan. at 553-54. But when a constitutional challenge results in the determination that the defendant's criminal history score is incorrect, the resulting sentence does not conform to the statutory provision in the term of the punishment authorized and, consequently, is an illegal sentence. See *Luarks*, 302 Kan. at 975; *Neal*, 292 Kan. at 631. Under K.S.A. 22-3504(1), Kansas courts have jurisdiction to correct an illegal sentence at any time. *State v. Kelly*, 298 Kan. 965, Syl. ¶ 5, 318 P.3d 987 (2014).

Based on *Neal*, retroactivity analysis is not applicable when it is determined by a court that a constitutional error affects the defendant's criminal history score resulting in an illegal sentence. We conclude that a claim under *Dickey* may be brought in a motion to correct illegal sentence even when the defendant's direct appeal has been completed and the defendant's sentence is final. See *Martin*, 52 Kan. App. 2d ___, Syl. ¶ 8.

9

Although we could end our analysis here, we also point out that the United States Supreme Court's decision in *Apprendi* was in place before Smith's sentencing in 2006. As a result, the rationale in *Apprendi* should apply to the calculation of Smith's criminal history score. In *Dickey*, our Supreme Court explicitly held: "[C]lassifying Dickey's prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*." 301 Kan. at 1021. In its analysis of those constitutional rights, the court began by examining *Apprendi*, indicating that *Apprendi* was the basis for the holding in *Dickey*. See 301 Kan. at 1036-37. *Descamps* provided a means by which to determine whether certain sentencing determinations violated *Apprendi*, and *Dickey* applied that framework to Kansas criminal history determinations. 301 Kan. at 1036-40.

Because both *Descamps* and *Dickey* are applications of *Apprendi* and Smith's current Kansas case arose after *Apprendi* was decided, applying *Dickey* would not require retroactive application of the caselaw identifying the constitutional rights at stake. See *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001) ("[T]he new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal or which are not yet final or which arose after June 26, 2000."). Therefore, even if this court were to consider Smith's challenge under the general principle that new constitutional rules cannot be retroactively applied to cases on collateral review, that principle would not bar Smith's claim.

IS SMITH ENTITLED TO RELIEF UNDER *DICKEY*?

We now turn to the merits of Smith's claim that his South Carolina burglary conviction should have been scored as a nonperson felony for criminal history purposes based on our Supreme Court's holding in *Dickey*. Smith contends that classifying his South Carolina burglary conviction as a person felony involved impermissible judicial factfinding regarding (1) whether his prior conviction was burglary of a dwelling and (2) his intent when he entered the building or structure to commit the burglary. Smith argues

10

that this court should vacate his sentence and remand with directions to the district court to resentence Smith and classify the South Carolina burglary as a nonperson offense for criminal history purposes. The State responds that this court should remand to the district court for further proceedings to determine whether the South Carolina burglary should be classified as a person or nonperson offense.

"Whether a prior conviction should be classified as a person or nonperson offense involves the interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review. [Citations omitted.]" *Keel*, 302 Kan. at 571.

Initially, we note that although Smith did not challenge the person classification of his South Carolina burglary conviction in the district court, he may do so for the first time on appeal under *Dickey*. See 301 Kan. at 1034. Likewise, our Supreme Court in *Dickey* determined that a defendant is not barred from challenging the classification of a prior conviction as a person felony in a motion to correct illegal sentence merely because the defendant did not object to the classification at sentencing. 301 Kan. at 1032.

> "Under the analysis in *Descamps*, which has been adopted in Kansas in *Dickey*, a court may use one of two approaches to determine whether a prior conviction may be used for sentencing purposes. The categorical approach is appropriate 'when the statute forming the basis of the defendant's prior conviction contains a single set of elements constituting the crime,' and consists of comparing the elements of the two crimes; if the elements of the prior crime of conviction are the same as or narrower than the later offense, the prior crime may be used for sentencing purposes. See *Dickey*, 301 Kan. at 1037. The second approach, the modified categorical approach, 'applies when the statute forming the basis of the prior conviction is a "divisible statute," *i.e.,* a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the generic offense.' 301 Kan. at 1037." *State v. Mullens*, 51 Kan. App. 2d 1114, 1118, 360 P.3d 1107 (2015).

11

The relevant Kansas burglary statute is the one in effect at the time Smith's current crime of conviction was committed—in July 2006. See *Keel*, 302 Kan. at 590. Thus, Smith's argument on appeal requires interpretation of multiple statutes: (1) K.S.A. 21-4711; (2) K.S.A. 21-3715 (Torrence 2007), the Kansas burglary statute in effect at the time Smith committed his current crime of conviction; (3) K.S.A. 21-3110 (Torrence 2007), the Kansas statute defining "dwelling" at the time Smith committed his current crime of conviction; (4) S.C. Code Annot. § 16-11-312 (2003), the South Carolina burglary statute in effect at the time Smith committed his South Carolina burglary; and (5) S.C. Code Annot. § 16-11-10 (2003) and § 16-11-310 (2003), the South Carolina statutes defining "dwelling" at the time Smith committed his South Carolina burglary.

In 1993, the South Carolina burglary statute stated, in relevant part:

"(A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime therein.

"(B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:

(1) When, in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:

(a) Is armed with a deadly weapon or explosive; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument; or

(d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or

(2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

(3) The entering or remaining occurs in the nighttime." S.C. Code Annot. § 16-11-312 (2003).

K.S.A. 21-3715 (Torrence 2007), the Kansas burglary statute in effect when Smith committed his current crime of conviction, stated:

12

"Burglary is knowingly and without authority entering into or remaining within any:

(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein."

K.S.A. 21-4711(d) deals particularly with burglary and states:

"Prior burglary adult convictions and juvenile adjudications will be scored for criminal history purposes as follows:

"(1) As a prior person felony if the prior conviction or adjudication was classified as a burglary defined in subsection (a) of K.S.A. 21-3715 and amendments thereto.

"(2) As a prior nonperson felony if the prior conviction or adjudication was classified as a burglary as defined in subsection (b) or (c) of K.S.A. 21-3715 and amendments thereto.

"The facts required to classify prior burglary adult convictions and juvenile adjudications must be established by the state by a preponderance of the evidence."

Smith argues that under *Apprendi* and *Descamps*, the district court erred in going beyond the fact of the South Carolina burglary conviction and making factual findings about the South Carolina burglary without requiring the State to prove those facts. Smith points to two specific implied factual findings: (1) whether he burglarized a "dwelling" as defined in Kansas, and (2) his intent when he entered the building or structure to commit the burglary.

*Dwelling*

The PSI report in the current case defined Smith's South Carolina conviction as "Burglary of Dwelling 2nd Degree." S.C. Code Annot. § 16-11-310 (2003) defines

13

dwelling in the context of burglary as "its definition found in § 16-11-10 and also . . . the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person." S.C. Code Annot. § 16-11-10 (2003) states:

"With respect to the crimes of burglary and arson and to all criminal offenses which are constituted or aggravated by being committed in a dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other swelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the same establishment of which it is an appurtenance shall be deemed parcels."

On the other hand, at the time Smith committed his current crime of conviction, Kansas defined "dwelling" in the context of burglary as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 21-3110(7) (Torrence 2007). The South Carolina burglary statute and specifically its understanding of the term "dwelling" is a divisible statute, and one of the permutations of elements under which Smith could have committed burglary of a dwelling in South Carolina matches the elements of Kansas' burglary of a dwelling. Thus, under *Dickey* and *Descamps*, the modified categorical approach is appropriate to determine whether the South Carolina conviction should be scored as a person or nonperson offense for criminal history purposes. See *Mullens*, 51 Kan. App. 2d at 1118.

Smith contends that because the South Carolina definition of dwelling is broader than Kansas' definition, *Apprendi* prohibits any additional factfinding about the South Carolina offense. But *Dickey* and *Descamps* clearly allow a sentencing court, without running afoul of *Apprendi*, "to look beyond the elements of the . . . statute and examine a limited class of documents to determine 'which of a statute's alternative elements formed

14

the basis of the defendant's prior conviction.' [Citation omitted.]" *Dickey*, 301 Kan. at 1037-38. Permissible documents include "charging documents, plea agreements, jury instructions, verdict forms, and transcripts from plea colloquies as well as findings of fact and conclusions of law from a bench trial. [Citation omitted.]" 301 Kan. at 1038.

Here, the district court did not examine any such documents prior to making the implied finding that Smith's South Carolina conviction fits within the parameters of a Kansas burglary of a dwelling, a finding necessary to classify the South Carolina burglary as a person offense. See *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 (2015) ("[T]he distinction between person and nonperson burglaries under K.S.A. 2014 Supp. 6811[d] hinges on whether the offender burglarized a dwelling."). Thus, we must remand for further proceedings for the district court to determine whether Smith's South Carolina burglary conviction was of a dwelling as defined by the applicable Kansas statutes and whether it should be classified as a person or nonperson offense for criminal history purposes. See *Mullens*, 51 Kan. App. 2d at 1119-20.

*Intent to enter*

Smith also argues that the district court made impermissible findings of fact involving his intent when he entered the dwelling or structure to commit the burglary. In South Carolina, second-degree burglary requires entering a building or dwelling "with intent to commit a crime therein." See S.C. Code Annot. § 16-11-312 (2003). In contrast, the Kansas burglary statute requires the "intent to commit a felony, theft or sexual battery." See K.S.A. 21-3715 (Torrence 2007). As with the "dwelling" analysis, the South Carolina statute clearly allows for broader intent than the Kansas statute, but at least one set of elements that would satisfy the requirements for South Carolina would also satisfy the requirements for Kansas. Therefore, the modified categorical approach is appropriate under *Dickey* and *Descamps*.

15

As with the question of whether the dwelling in South Carolina satisfied the dwelling requirement in Kansas, the district court erred in making the implied factual finding that the intent element in the South Carolina burglary satisfied the intent element under Kansas law. On remand, the district court may examine the permissible documents identified in *Dickey* in order to make that determination.

In summary, we vacate Smith's sentence and remand for further proceedings for the district court to determine whether his South Carolina burglary conviction should be classified as a person or nonperson offense for criminal history purposes. The district court may examine the identified permissible documents in order to determine the nature of the offense. If the district court cannot determine the basis of the South Carolina burglary conviction or if it determines that it involved (1) entry of a structure not considered a dwelling in Kansas or (2) an intent to commit a crime other than a felony, theft, or sexual battery, then the South Carolina burglary must be classified as a nonperson offense. If, however, the district court determines that the South Carolina burglary conviction falls within the parameters of the crime of burglary of a dwelling under applicable Kansas law, the South Carolina burglary should be classified as a person offense. See *Mullens*, 51 Kan. App. 2d at 1119-20.

Vacated and remanded with directions.